**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **CARSBIA VAN TAYLOR, # 117810,** | * |
| | * |
|     **Plaintiff,** | * |
| | * |
| **vs.** | *   **CIVIL ACTION NO. 21-00076-CG-B** |
| | * |
| **CYNTHIA STEWART,** *et al.*, | * |
| | * |
|     **Defendants.** | * |

### REPORT AND RECOMMENDATION

Plaintiff Carsbia Van Taylor, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed the instant action seeking relief under 42 U.S.C. § 1983. This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R), and is now before the Court on Defendants Cynthina Stewart, Regina Bolar, Phillip Mitchell, Vencini Smith, and Terry Raybon's motion for summary judgment (Doc. 59). For the reasons set forth below, it is recommended that the motion for summary judgment be **GRANTED**, and that the claims against Defendants Stewart, Bolar, Mitchell, Smith, and Raybon be **DISMISSED** with prejudice.

Additionally, **Plaintiff Taylor is hereby placed on Notice**, by the filing of this Report and Recommendation, of the undersigned's intention to recommend *sua sponte* that summary judgment likewise be granted in favor of Defendants Jefferson Dunn, Grant Culliver, and Cheryl Price, pursuant to Fed. R. Civ. P. 56(f)(3).

## I. SUMMARY OF ALLEGATIONS AND BACKGROUND

### A. Complaint (Doc. 25).[1]

Plaintiff Carsbia Van Taylor ("Taylor") brings this action against Defendants Cynthia Stewart, Regina Bolar, Phillip Mitchell, Terry Raybon, Jefferson Dunn, Grant Culliver, Cheryl Price, and Captain Smith.  Taylor alleges that on or about January 27, 2020, while incarcerated at Holman Correctional Facility ("Holman"), the Alabama Department of Corrections ("ADOC") made a public announcement that Holman "was closing so that it could be condemned due to toxic conditions[,]" which Taylor concluded were "contaminated waters." (Doc. 25 at 4). According to Taylor, he "was already suffering from several strange illnesses, some of which could have been caused by . . . drinking contaminated,

---

[1] Taylor's amended complaint is the operative complaint in this action. (See Doc. 25). Because Taylor's complaint was signed under penalty of perjury (see Doc. 1 at 7), the factual allegations in the complaint may be used as an affidavit opposing the motion for summary judgment.  See Sammons v. Taylor, 967 F.2d 1533, 1544 n.5 (11th Cir. 1992); Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam). To function as an opposing affidavit, a complaint must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(c)(4); Thomas v. Stewart, 2022 U.S. Dist. LEXIS 18920, at *12, 2022 WL 636104, at *10 (S.D. Ala. Feb. 2, 2022) (a complaint/affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated"). Accordingly, the Court will consider the portions of Taylor's complaint that meet these requirements in ruling on the motion for summary judgment.

poisonous water." (Id. at 4, 8). Taylor contends that his Eighth Amendment rights were violated by Defendants when they did not notify him of the water's contamination or warn him that drinking the water could cause serious illnesses. (Id. at 9). According to Taylor, he has been diagnosed with "Lichen Simplex Chronicus, cancer, brain tumors, spots on his heart, etc." (Id.). He further states, "No doctor has never diagnosed me to have not been infected by the water. Just as no doctor has ever diagnosed me to be infected by the water." (Id.).

Taylor further alleges that Defendants former Warden Cynthia Stewart, Warden Terry Raybon, Warden Phillip Mitchell, Captain Regina Bolar, Warden Vencini Smith, former ADOC Commissioner Jefferson Dunn, Regional Coordinator Cheryl Price, and Deputy Commissioner Grant Culliver knew of the contaminated water prior to the January 27, 2020 announcement but failed to inform him (and other inmates) of the problem or of the potential serious illnesses that could be caused by the water. (Id. at 5-6, 8-12). He further claims that Defendants did, however, warn the staff about problems with the water, and instructed the staff not to drink the water. (Id. at 5, 8-9). Taylor also contends that Defendants Stewart and Dunn provided protection for staff (like bottled water and hand sanitizer) but failed to make any provision for the inmates. (Id. at 5, 8-9). Taylor seeks monetary relief from each Defendant in

the amounts of $125,000.00 for compensatory damages and $250,000.00 for punitive damages. (Id. at 7).

**B. Defendants' Answers and Special Reports (Docs 49, 50, 58).**

Defendants Cynthia Stewart, Warden Phillip Mitchell, Warden Terry Raybon, Captain Regina Bolar, and Warden Vencini Smith answered the suit, denied the allegations asserted against them and raised, among other things, the defenses of failure to state a claim upon which relief may be granted and qualified immunity.[2] (Doc. 49). As a whole, Defendants contend in their special reports that Taylor offers no evidence that: (1) the water at Holman was contaminated; (2) the Defendants knew the water at Holman was contaminated; or (3) that he suffered any injury as a result of drinking contaminated water at Holman. (Docs. 50, 58). Defendants each affirm having no knowledge that the water at Holman was contaminated. (Docs. 50-1 through 50-4, 58-1). Defendants further contend that parts of Holman were closed in January 2020 due to "'increasing problems with the tunnel that houses the prison's electrical, water, and sewer systems.'" (Doc. 50 at 10; Doc. 50-5). The following declarations were submitted as part of Defendants' special report:

---

[2] To date, Supervisory Defendants former ADOC Commissioner Jefferson Dunn, Regional Coordinator Cheryl Price, and Deputy Commissioner Grant Culliver have not answered this suit and thus are not parties to the motion for summary judgment.

Regina Bolar affirms by personal affidavit that she retired in October or November 2019 and was not an employee of the Alabama Department of Corrections (ADOC) at the time complained of by Taylor. She further denies having any personal knowledge of the matters alleged in Taylor's complaint. (Doc. 50-1).

Phillip Mitchell and Terry Raybon affirm by affidavits that in 2020 an announcement was made that parts of Holman were decommissioned. They affirm they were not notified or made aware that the water at Holman was contaminated or that this was the reason for the decommissioning. They further affirm they did not instruct staff to not drink the water due to contamination. (Docs. 50-2; 50-3).

Cynthia Stewart, by affidavit, affirms that as the former Warden III of Holman from August 16, 2016 through April of 2020, she had no knowledge of the water at Holman being contaminated. She affirms she never ordered her staff to refrain from drinking the water nor did she order inmates to refrain from drinking the water. She further affirms that due to the coronavirus hand sanitizer, masks and additional protocols were issued to staff and inmates in February 2020 in accordance with Centers for Disease Control prevention guidelines for detention centers. (Doc. 50-4).

Vencini Smith affirms in a sworn affidavit that she has no knowledge of the allegations asserted in Taylor's complaint and further affirms she never received any complaints from Taylor and never subjected him to any type of cruel and unusual punishment. (Doc. 58-1).

Defendants also submitted an AL.com news article, dated January 29, 2020, titled "Alabama moving 600 inmates from crowded, dangerous, deteriorating Holman prison[.]" (Doc. 50-5). The article publicizes the partial closing of Holman "because of deteriorating underground utilities, requiring the transfer of more than 600 inmates" in an already overpopulated prison system. The article indicates that the "ADOC Commissioner Jeff Dunn announced the move this [January 29, 2020] morning." (Id.). The article further states that Alabama's death row inmates will remain

at Holman and will be "move[d] into a section of the prison now used for restrictive housing that has independent power, water, sewage systems," and about 150 low-risk inmates "will move into a stand-alone dorm that has utilities separate from the main prison." (Id.).

In an order dated August 10, 2023 (Doc. 59), the Court converted Defendants' answers and special reports and supplemental special report (Docs. 49, 50, 58) into a motion for summary judgment, explained to the parties the procedure for such motions under Federal Rule of Civil Procedure 56, and afforded the parties an opportunity to submit additional information or evidence in support of or in opposition to the motion by September 11, 2023. (Doc. 59).

**C. Response to Defendants' Special Report (Doc. 60).**

As directed, Taylor filed a response to Defendants' motion for summary judgment. (Doc. 60). According to Taylor, "the ADOC commissioners knew about the contaminated water problem long before Holman closed down in 2020[,]" as did the Holman officials, who failed to inform the inmates of the toxic conditions until after the announcement that Holman was closing. (Doc. 60 at 3-4). In support of his assertion that Defendants knew of the contaminated water "for years before 2020[,]" Taylor declares, under penalty of perjury, that a few years before the closing of Holman, word circulated that the guards were warned by their

6

supervising officers to refrain from drinking the water from the faucets at Holman and that cases of bottled water and hand sanitizer were delivered by the ADOC headquarters prior to January 2020 – thus, before the coronavirus outbreak in March 2020. (Doc. 60 at 10, 19; Doc. 60-1 at 2). He also claims he experienced "strange unknown breakouts on his skin for years[,]" which were diagnosed first as scabies (a common skin condition), but later as lichen simplex chronicus (a rare skin disease). (Doc. 60 at 11-12, 16). Because Taylor's skin breakouts would "itch[] real bad whenever he would get out of the shower[,]" he associates his skin condition to the quality of the water. (Doc. 60 at 12; Doc. 60-1 at 2). Also, Taylor asserts that he did not read or hear Commissioner Dunn's January 29, 2020 announcement about the partial closure of Holman; however, he "saw and heard a spokesperson speak on behalf of the ADOC on breaking news on WKRG TV-5, Mobile, Alabama[,]" on or around January 27, 2020, and that person stated that Holman "was closing due to electrical problems and toxic conditions." (Doc. 60 at 8; Doc. 60-1 at 1).

In support of his claim, Taylor also submits his medical grievance form evidencing complaints he made on October 30, 2018, regarding a rash and itching (Doc. 60-1 at 4), his request slip submitted on May 15, 2019, seeking renewal of his lichen simplex chronicus medication and requesting that photographs be taken of his breakout rash (Doc. 60-1 at 6), and a request slip he submitted

on June 25, 2019, complaining about extreme itching and requesting photographs be taken of the affected areas on his body (Doc. 60-1 at 5).

## II. **STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphases in original); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'") (emphases in original) (citation omitted).

> The party asking for summary judgment "always bears the
> initial responsibility of informing the district court
> of the basis for its motion, and identifying those
> portions of the 'pleadings, depositions, answers to
> interrogatories, and admissions on file, together with
> the affidavits, if any,' which it believes demonstrate
> the absence of a genuine issue of material fact."
> [Celotex Corp. v. Catrett, 477 U.S. 317,] 323, 106 S.Ct.
> 2548. The movant can meet this burden by presenting
> evidence showing there is no dispute of material fact,
> or by showing or pointing out to the district court that
> the nonmoving party has failed to present evidence in
> support of some element of its case on which it bears
> the ultimate burden of proof. Id. at 322-24, 106 S.Ct.
> 2548.

8

> Once the moving party has met its burden, Rule 56(e)
> "requires the nonmoving party to go beyond the pleadings
> and by [its] own affidavits, or by the 'depositions,
> answers to interrogatories, and admissions on file,'
> designate 'specific facts showing that there is a
> genuine issue for trial.'" To avoid summary judgment,
> the nonmoving party "must do more than show that there
> is some metaphysical doubt as to the material facts." On
> the other hand, the evidence of the nonmovant must be
> believed and all justifiable inferences must be drawn in
> its favor.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted). The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. Garczynski, 573 F.3d at 1165.

The nonmoving party must produce substantial evidence to defeat a motion for summary judgment; a "mere scintilla" of evidence is insufficient. Id. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995), cert. denied, 516 U.S. 817 (1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007); see Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (per curiam).

III. **DISCUSSION**

   A. **Eighth Amendment Standard for Conditions of Confinement Claim.**

   The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting "'deliberate indifference' to a substantial risk of serious harm to an inmate[.]" Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). At the same time, "the Constitution does not mandate comfortable prisons[.]" Rhodes v. Chapman, 452 U.S. 337, 349 (1981). All that is required under the Eighth Amendment is that prison officials "ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates[.]'" Farmer, 511 U.S. at 832 (citations omitted); see Hamm v. DeKalb Cnty., 774 F.2d 1567, 1572 (11th Cir. 1985) (the Eighth Amendment requires a prisoner receive "reasonably adequate food, clothing, shelter, and sanitation."), cert. denied, 475 U.S. 1096 (1986). Prison conditions constitute cruel and unusual punishment when they result in the "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347.

   To prevail on an Eighth Amendment claim alleging inhumane conditions of confinement, an inmate must make both an objective and a subjective showing. Farmer, 511 U.S. at 834. The objective component requires an "extreme deprivation ... [to] make out a

conditions-of-confinement claim[,] [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society[.]'" Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations omitted). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson v. Seiter, 501 U.S. 294, 305 (1991). A court looks to "contemporary standards of decency" to determine whether the challenged conditions resulted in a deprivation of "the minimal civilized measure of life's necessities" or "basic human needs." Rhodes, 452 U.S. at 347.

> [U]nder the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L. Ed. 2d 156 (1992). The challenged condition must be "extreme." Id. at 9, 112 S.Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, id. at 35, 113 S.Ct. at 2481.

Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004). Thus, "[u]nder the objective component, the plaintiff must demonstrate 'a substantial risk of serious harm.'" Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (finding the risk of COVID-19 satisfied the objective component).

The subjective component requires a showing that prison officials have been "deliberate[ly] indifferen[t]" to a substantial risk of serious harm. Farmer, 511 U.S. at 828–29. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. And the official must disregard that risk by conduct that is more than negligence – "or more simply stated, whether they 'recklessly disregard[ed] that risk[.]'" Swain, 961 F.3d at 1285 (citation omitted). However, prison officials "'who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" Id. at 1287 (citation omitted). This standard "'incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions.'" Id.

In addition to satisfying these components, "[a] plaintiff must also show that the constitutional violation caused his injuries." Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1028 (11th Cir. 2001), abrogated on other grounds by Bell Atl. Corp. v.

_Twombly_, 550 U.S. 544 (2007); _see_ _Williams v. Bennett_, 689 F.2d 1370, 1384-85 (11th Cir. 1982), _cert. denied_, 464 U.S. 932 (1983).

**B. Objective Component.**

Turning to the objective component, Taylor must "present evidence in support of [the] element[s] of [his] case on which [he] bears the ultimate burden of proof." _ThyssenKrupp Steel_, 926 F. Supp. 2d at 1289. Summary judgment will be entered against a nonmovant "who fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." _Celotex Corp._, 477 U.S. at 322. "[T]he substantive law will identify which facts are material." _Anderson_, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." _Id._ at 252. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." _Id._ at 255. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts[,] ... [w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" _Scott_, 550 U.S. at 380 (citation omitted).

Notably, while Taylor contends that an ADOC representative appeared on WKRG on January 27, 2020, and stated that the Holman

13

facility was closing and that conditions at the facility were toxic, the record is devoid of any such recording. (Doc. 25 at 4). Taylor has not identified the person who purportedly made the statement but maintains that an announcement was made to that effect and that contaminated waters led to the closing of the facility. (Id.). On the other hand, Defendants maintain that Taylor's allegations are false, and they deny that the water was toxic and deny that they notified and protected staff from the purported contaminated water but not the inmates. (Docs. 50-1, 50-2, 50-3, 50-4, 58-1). Defendants have also submitted the official statement released by ADOC through former Commissioner Dunn announcing the decommissioning of a portion of Holman due to "deteriorating conditions" of the 51-year old prison. (See Doc. 50-5). This statement makes no reference to toxic or contaminated water.

And, aside from his unsupported assertions, Taylor has provided no evidence that the water at Holman from which he drank and bathed was contaminated. Simply put, the record is devoid of any evidence that suggests, let alone establishes, that the water at Holman was tested in some manner and showed contamination and that the contamination was harmful to him. Hall v. Skipper, 808 F. App'x 958, 960-61 (11th Cir. 2020) (per curiam) (defendants were granted summary judgment because the bacteria level in the prison's water complied with standards and therefore was safe, and the

14

plaintiff failed to show that the bacteria caused his infection); Cary v. Hickenlooper, 673 F. App'x 870, 875 (10th Cir. 2016) (the objective prong was not met when the plaintiff failed to show how a brief exposure to minimally increased uranium levels in the prison's water detected in a test one month caused or exacerbated his medical conditions). While Taylor contends that correctional staff was provided bottled water and hand sanitizer prior to January 27, 2020, this can be considered general hygienic measures and does not demonstrate that Holman's water was contaminated.

The same holds true for Taylor's assertion that he experienced skin issues, including rashes, breakouts, and itching, in October of 2018 and May and June of 2019. (Doc. 60-1 at 4-6). Indeed, the medical records reflect that Taylor's treating physician determined his skin rash "was a side effect from the cancer shot." (Id. at 4). Taylor was admittedly diagnosed with cancer and received 42 radiation treatments while confined at Holman; however, his medical records do not contain any reference to contaminated or toxic water or anything suggesting that either his cancer condition or his itchy skin condition was caused by contaminated or toxic water. (Id. at 3). In fact, Taylor

acknowledges that no doctor has ever diagnosed him as having been infected by the water.[3] (Doc. 25 at 9).

Extant case law provides that a prisoner "has a constitutional right to safe drinking water." Hall v. Sawyer, 2022 U.S. App. LEXIS 1325, at *4, 2022 WL 152235, at *2 (11th Cir. 2022) (citing Helling v. McKinney, 509 U.S. 25, 33 (1992)). In Hall, the Eleventh Circuit affirmed the district court's grant of summary judgment to the defendants on a claim for contaminated water brought by a civilly committed detainee.[4] (Id. at *2-3). In affirming the dismissal, the Eleventh Circuit observed that no genuine issue of material fact had been created with respect to the subjective component of the detainee's Eighth Amendment claim because the defendant drank the water, and the water's testing showed no abnormalities. (Id. at *2).

Here, Taylor's assertion of contaminated water is simply not borne out by the record before the Court. The record is devoid of any evidence from which a jury could find that Holman's water

---

[3] As noted *supra*, Taylor asserts that "No doctor has never diagnosed me to have not been infected by the water. Just as no doctor has ever diagnosed me to be infected by the water." (Doc. 25 at 90).

[4] Eighth Amendment case law is the standard that is applied to the Fourteenth Amendment, due process rights of those civilly committed. Hall, 2022 U.S. App. LEXIS at *4, 2022 WL 152235, at *2 (quoting Bilal v. Geo Care, LLC, 981 F.3d 903, 915 (11th Cir. 2020)).

presented a substantial risk of serious harm. Thus, Taylor has failed to create a genuine issue of material fact as to the objective component of an Eighth Amendment claim. Inasmuch as both components of an Eighth Amendment claim must be satisfied, the subjective component will not be addressed because Taylor has failed to meet his burden regarding the objective component on his contaminated water claim. <u>Chandler</u>, 379 F.3d at 1297.

**III. <u>NOTICE OF JUDGMENT INDEPENDENT OF THE MOTION</u>**

Rule 56 of the Federal Rules of Civil Procedure permits the court, after it has given notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). Thus, by the filing of the instant Report and Recommendation, the undersigned **notifies Plaintiff Taylor** of its intention to consider a recommendation to the presiding District Judge that she enter summary judgment, *sua sponte*, in favor of Defendants Jefferson Dunn, Grant Culliver, and Cheryl Price on the claims raised against them in this action.

Taylor has raised an Eighth Amendment claim against supervisory Defendants Culliver and Price for failing to protect him from harmful conditions at Holman. According to Taylor, Defendants knew about contaminated water at Holman well before January 27, 2020, but failed to warn the inmates, while advising officers and staff of the danger. (Doc. 25 at 9, 11-12). These

17

claims and the allegations made in Taylor's pleadings (see Docs. 25, 60) are identical to the claims and allegations made against Defendants Stewart, Mitchell, Raybon, Bolar, and Smith.  Taylor has also raised an Eighth Amendment claim against the former ADOC Commissioner Jefferson Dunn. Taylor alleges that Dunn "informed the officers and staff with a memo warning them not to drink of that water[, a]nd he provided the staff with bottled water and hand sanitizers. But to the inmates he provided nothing." (Doc. 25 at 8-9).

As previously discussed, the record reflects that Holman supervisors, Defendants Stewart, Mitchell, Raybon, Bolar, and Captain Smith all denied notification and knowledge of the water at Holman being contaminated. (See Doc. 50-1; 50-2; 50-3; 50-4; 58-1). Additionally, Taylor has provided no memo to support his allegation, no date it was written, no manner that it was distributed, nor affidavits from any witnesses to have seen or read the memo. For this reason, Taylor fails to raise beyond mere accusation and speculation that Defendant Dunn composed and sent a memo to Holman staff that was received and read by Holman officials notifying them of contaminated water. Furthermore, as previously discussed, Taylor has not provided any evidence that the water at Holman was unsafe nor medical evidence that he was harmed by contaminated water. Thus, Taylor has not shown that any

Defendant had knowledge of contaminated water at Holman and failed to protect him or other inmates.

For the reasons stated in this report, after a review of all the relevant facts, it is recommended that summary judgment be entered on behalf of Defendants Dunn, Culliver, and Price and dismissal of all claims against them.

However, Defendants Dunn and Culliver have yet to be served with the complaint and Defendant Price has yet to answer the complaint. Accordingly, none are a party to this motion for summary judgment. Given that Taylor presents no differing facts as to his claims against Defendants Dunn, Culliver, and Price than those against Defendants Stewart, Mitchell, Raybon, Bolar, and Captain Smith, the undersigned maintains that the findings of facts and conclusions of law regarding the claims presented against Defendants Stewart, Mitchell, Raybon, Bolar, and Captain Smith would be essentially identical to those of Defendants Dunn, Culliver, and Price. Therefore, Taylor is hereby placed on notice by this report and the analysis of his claims of the undersigned's intention to consider summary judgment in favor of Defendants Dunn, Culliver, and Price.

Accordingly, within the fourteen days provided for filing objections to this report and recommendation, Plaintiff Taylor shall **SHOW CAUSE**, in writing, why the court should not enter summary judgment pursuant to Rule 56(f)(3) of the Federal Rules of

Civil Procedure in favor of Defendants Dunn, Culliver, and Price on Taylor's 42 U.S.C. § 1983 claims. In responding to this notice, Taylor should refer to Fed. R. Civ. P. Rule 56, including the following provision:

> A party asserting that a fact . . . is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Taylor cannot rely only on his unsworn pleadings but must respond to this notice by filing sworn affidavits, depositions, or other materials set forth in Rule 56(c)(1)(A) — or by citing such evidence already of record in this matter — which set forth facts presented in a form that would be admissible evidence demonstrating that there is a genuine dispute as to a material fact for trial in this case. If Taylor fails to file sworn affidavits or other acceptable evidence as set forth in Rule 56, the court will accept the evidence identified above as undisputed, for purposes of evaluating whether the court should grant summary judgment in Defendants' favor. See Fed. R. Civ. P. 56(e). Taylor's failure to follow the requirements of Rule

56(c)(1)(A) in opposing the proposed summary judgment could result in a recommendation from the undersigned Magistrate Judge to the presiding District Judge that she enter summary judgment in the favor of Defendants Dunn, Culliver, and Price and enter final judgment in this case without a trial.

## IV. CONCLUSION

Based upon Taylor's failure to establish a violation of the Eighth Amendment, it is recommended that Defendants' motion for summary judgment be **GRANTED** and that the claims against these Defendants be **DISMISSED** with prejudice.[5]

Furthermore, Plaintiff Taylor is placed on Notice by the filing of this Report and Recommendation of the **Court's intention to recommend the granting of summary judgment for Defendants Jefferson Dunn and Grant Culliver**, who have not been served with this complaint to date, **and Defendant Cheryl Price** who has not answered the complaint to date. Taylor is afforded the opportunity to include within any objections he has to this Report and

---

[5] Given that Taylor has not established a constitutional violation against Defendants and has sued Defendants in their individual capacities (see Doc. 25 at 1), "[t]he doctrine of qualified immunity protects [them as] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). It also extends to the situation where a violation of a constitutional right has not been established by the pleadings, such as here. Id. at 239.

Recommendation any reasons that should preclude the entry of summary judgment on behalf of Defendants Dunn, Culliver, and Price.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this **5th** day of **December, 2023.**

                                      **_____/s/ SONJA F. BIVINS__**
                                      **UNITED STATES MAGISTRATE JUDGE**